**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

MEDICAL IMPACT COMPANY, LLC
d/b/a Salud EDUCATION,

Plaintiff,

v.

MERITUS MEDICAL CENTER, INC.,

Defendant.

Case No.: 1:26-cv-01327-ABA

**DEMAND FOR JURY TRIAL**

REPLY MEMORANDUM AND POINTS OF LAW IN FURTHER SUPPORT OF
PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS,
TO DISMISS COUNTERCLAIMS, AND TO STRIKE

OF COUNSEL:

Richard L. Renck (*District of Maryland application for admission forthcoming*; MD Bar No. 2111220002)
Michael B. Gonen (*pro hac vice*)
1201 N. Market Street, Suite 501
Wilmington, DE 19801
Telephone: (302) 657-4900
Fax: (302) 250-4826
RLRenck@duanemorris.com
MBGonen@duanemorris.com

Patrick J. Loftus (*pro hac vice*)
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1367
Loftus@duanemorris.com

**DUANE MORRIS LLP**

Allison M. Bortner (Bar. No. 19860)
Anamika R. Moore (Bar No. 21689)
1201 Wills Street, Suite 330
Baltimore, MD 21231
Telephone: (410) 949-2900
AMBortner@duanemorris.com
ARMoore@duanemorris.com

*Attorneys for Plaintiff Medical Impact Company, LLC d/b/a Salud Education*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....................1

II. LEGAL STANDARD ....................1

III. THE OPPOSITION BRIEF FAILS TO REBUT SALUD'S ENTITLEMENT TO JUDGMENT ON THE PLEADINGS AND DISMISSAL OF THE COUNTERCLAIMS ....................3

A. Meritus Repudiated and Breached the Agreement .................... 3

B. Meritus Cannot Save its Fatally Flawed Breach of Contract Claim .................... 4

C. The Opposition Brief's Attempt to Justify its Confessed Breach of Salud's Notice-and-Cure Rights Fails .................... 6

D. Meritus Cannot Add a Trade Secrets Claim in the Briefing .................... 8

E. Meritus Cannot Defend its Fatally Flawed Fraud Claim .................... 9

i. Meritus's Cannot Transform Vague Contract Language Into Fraud .......... 9

ii. Meritus Does Not Allege a Fraudulent Purpose .................... 10

F. The Smattering of Unrelated Authorities Meritus Invokes Do Not Support its Positions .................... 11

i. Consequential Damages are Not Punitive Damages .................... 11

ii. Unlike in *Storetrax*, the Agreement has a Cure Right .................... 12

iii. There is No Fiduciary Relationship .................... 12

G. Meritus Fails to Defend its Scandalous and Impertinent Personal Attacks .......... 14

IV. CONCLUSION ....................15

# TABLE OF AUTHORITIES

## Cases

*Appel v. Hupfield,* 198 Md. 374, 84 A.2d 94 (1951) ....................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................... 1-2

*Barclay v. Briscoe*, 427 Md. 270 (2012) ....................5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................... 1-2

*Brass Metal Prods., Inc. v. E-J Ents., Inc.*, 189 Md. App. 310 (2009) ....................13

*Burson v. Simard*, 424 Md. 318 (2012) ....................11

*Buxton v. Buxton*, 363 Md. 634 (2001) .................... 12-13

*C.W. Blomquist & Co. v. Cap. Area Realty Investors*, 270 Md. 486 (1973) ....................3

*Comptroller of Maryland v. Broadway Servs., Inc.*, 250 Md. App. 102 (2021) ....................13

*Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ....................2

*Ellerin v. Fairfax Sav. F.S.B.*, 337 Md. 216 (1995) ....................10

*First Union Nat'l Bank v. Steele Software Sys. Corp.*, 154 Md. App. 97 (2003) ....................10

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999) ....................10

*Kann v. Kann*, 344 Md. 689 (Md. 1997) ....................14

*Learning Works, Inc. v. the Learning Annex, Inc.*, 830 F.2d 541 (4th Cir. 1987) ....................10

*Lewis v. Accelerated Transport-Pony Express, Inc.*, 219 Md. 252 (1959) ....................5

*McCleary-Evans v. Maryland Dept. of Transp.*, 780 F.3d 582 (4th Cir. 2015) ....................2

*MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 130 F.4th 91 (4th Cir. 2025) ....................9

*NCO Fin. Sys., Inc. v. Montgomery Park, LLC*, 842 F.3d 816 (4th Cir. 2016) ....................3

*Ohio & Mississippi Ry. Co. v. McCarthy,* 96 U.S. 258 (1877) ....................5, 7

*Petroleum Traders Corp. v. Baltimore Cty.*, 2008 WL 11509397 (D. Md. Sept. 11, 2008), *aff'd*, 413 Fed. App'x 588 (4th Cir. 2011) ....................5, 7

*Plank v. Cherneski*, 469 Md. 548 (2020) ....................14

*RRC Ne., LLC v. BAA Maryland, Inc.*, 413 Md. 638 (2010) ....................4

*S. Walk at Broadlands Homeowner's Assoc., Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175 (4th Cir. 2013) ....................8

*Sass v. Andrew*, 152 Md. App. 406 (2003) ....................9

*Sharestates Invests., LLC v. WFG Nt'l Title Ins. Co.*, 2023 WL 8436159 (D. Md. Dec. 5, 2023) ....................15

*Sterling v. Ourisman Chevrolet of Bowie, Inc.*, 943 F. Supp. 2d 577 (D. Md. 2013)....................14

*Storetrax.com, Inc. v. Gurland*, 168 Md. App. 50 (2006) ....................12

*Sysco Machinery Corp. v. DCS USA Corp.*, 143 F.4th 222 (4th Cir. 2025)....................8

*Transamerica Premier Life Ins. Co. v. Selman & Co, LLC*, 401 F. Supp. 3d 576 (D. Md. 2019) ....................2, 4

*Trimed, Inc. v. Sherwood Med. Co.*, 977 F.2d 885 (4th Cir. 1992) ....................3

*Upman v. Clarke*, 359 Md. 32 (2000)....................13

*Woods v. City of Greensboro*, 855 F.3d 639 (4th Cir. 2017) ....................2

**Other Authorities**

Fed. R. Evid. 408 ....................15

Meritus School of Medicine, *Faculty & Staff*, https://www.msom.org/team/faculty-staff (last accessed July 31, 2026)....................8

Meritus School of Medicine, *Leadership*, https://www.msom.org/team/ leadership (last accessed July 31, 2026)....................8

Fed. R. Civ. P. 9 ....................9–11

Plaintiff Salud,[1] via undersigned counsel, hereby offers this Reply Memorandum and Points of Law in further support of its pending Motion (Dkt. 19).

## I. INTRODUCTION

Salud contracted with Meritus to provide services and expertise in developing the first new medical school in Maryland in over a century. Salud delivered: classes began at MSOM in 2025. Meritus, however, decided it did not want to hold up its end of the bargain. The facts Meritus concedes in its pleadings show indisputably: Meritus owes contractual payment obligations that it has refused to honor, without any excuse for its breach. Judgment is appropriately entered in favor of Salud, as well as dismissing Meritus's pretextual 'counterclaims.'

In its Opposition Brief, Meritus does not meaningfully contest its liability. Instead, the Opposition Brief attempts to muddy the issues by citing to overturned law, asserting inchoate and often character-based grievances, and pointing to settlement negotiations to imply that its scandalous and impertinent attacks on Salud's principals are retaliation for Salud's refusal to unilaterally discount its valid contract rights that Meritus has held to ransom.

## II. LEGAL STANDARD

As noted in the Opening Brief, federal courts require that claims rise above mere speculation to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the pleadings must set forth "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

[1] Unless otherwise noted, all abbreviations and capitalized terms retain their usage from Salud's Opening Brief. (Dkt. 19-1.) The Opening Brief is cited as "Op. Br. at ______."

for the misconduct alleged." *Id.* at 678. The standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Instead of these hornbook authorities, Meritus attempts to salvage its claim by asserting that dismissal "is only appropriate where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (Opp'n Br. at 7 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).) But, as the Courts of this Circuit have discussed, *Twombly* and *Iqbal* expressly abrogated and overruled that holding. *McCleary-Evans v. Maryland Dept. of Transp.*, 780 F.3d 582, 587 (4th Cir. 2015) ("the *Twombly* Court explicitly overruled the earlier standard articulated in *Conley v. Gibson*. . ."). Rather, *Twombly* and *Iqbal* set forth a higher heightened pleading standard relative to the *Conley* citation upon which Meritus relies. *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (describing *Twombly* as "abrogating the *Conley* standard," and explaining "[i]n *Iqbal*, the [United States Supreme] Court made clear that this heightened standard applied to all civil actions").

"[A] court is not required to accept legal conclusions drawn from the facts." *Transamerica Premier Life Ins. Co. v. Selman & Co, LLC*, 401 F. Supp. 3d 576, 588 (D. Md. 2019) (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). The Court accepts "only the factual allegations" without regard to the legal conclusions. *Id.* (quoting *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011)).

The Opposition Brief, simply put, relies on a lower pleading standard overruled by the Supreme Court over a decade ago, apparently in recognition that Meritus's accusations cannot survive the pleading standard operative in this Court.

## III. THE OPPOSITION BRIEF FAILS TO REBUT SALUD'S ENTITLEMENT TO JUDGMENT ON THE PLEADINGS AND DISMISSAL OF THE COUNTERCLAIMS

Meritus's pleadings concede facts entitling Salud to judgment as a matter of law on its affirmative claims. Meritus cannot deny that its Repudiation Letter constituted an anticipatory repudiation. The letter, in Meritus's own words, purported to terminate the Agreement while expressly refusing to give notice or opportunity to cure, despite relying on expressly exclusive contractual termination provisions which entitled Salud to cure any alleged deficiency before termination was available. Moreover, the ostensible grievance upon which Meritus premised termination was not a breach, or fraud, or otherwise any basis for termination. That grievance was just a pretext Meritus invoked to escape its contractual obligations once the college of osteopathic medicine was open and the central objective – and hardest parts – of the contract were achieved.

Likewise, Meritus's counterclaim for breach of contract fails for the same reason – its pretextual grievance is not a breach of contract. Meritus alleges no connection between Salud and Valley COM, and its complaints about Valley COM's dean's actions in that role simply cannot be imputed to Salud.

### A. Meritus Repudiated and Breached the Agreement

Repudiation acts or words which give a "definite, specific, positive, and unconditional" refusal to honor a contract. *See C.W. Blomquist & Co. v. Cap. Area Realty Investors*, 270 Md. 486, 494 (1973). When a party purports to terminate a contract but lacks any right to do so, the putative termination fails and the counterparty has a cause of action for breach of contract. *E.g. NCO Fin. Sys., Inc. v. Montgomery Park, LLC*, 842 F.3d 816, 823 (4th Cir. 2016); *Trimed, Inc. v. Sherwood Med. Co.*, 977 F.2d 885, 892 (4th Cir. 1992).

In the Repudiation Letter, Meritus invoked two sections of the Agreement – Section 5.4, and Section 6.2(f) – to purportedly 'terminate' the Agreement. (Op. Br. Ex. A at 1–2.) The only

conduct of which it complained was its accusation that Dr. Craft – not Salud – solicited Dr. Berkowitz for employment. (*Id.*) Meritus acknowledged that "returning Dr. Berkowitz to his position at MSOM" would fix this complaint, but because Meritus speculated that Salud "would be unable to satisfy" this requirement, Meritus announced it would deny Salud any opportunity to cure and was terminating the Agreement "effective immediately upon receipt of this notice." (*Id.* at 2.)

That is, Meritus definitively, specifically, positively, and unconditionally refused to honor the Agreement both generally, and specifically as to Salud's notice-and-cure rights. These admitted facts constitute a breach of contract. *Transamerica Premier Life Ins. Co. v. Selman & Co., LLC*, 401 F. Supp. 3d 576, 596 (D. Md. 2019) (applying Maryland law) ("To 'prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation.'") (quoting *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175, 776 A.2d 645, 651 (2001)).

### B. Meritus Cannot Save its Fatally Flawed Breach of Contract Claim

To state a claim for breach of contract under Maryland law, Meritus must "allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant." *RRC Ne., LLC v. BAA Maryland, Inc.*, 413 Md. 638, 658 (2010).

The sole grievance Meritus raises with Salud's contractual performance in the pleadings is that Dr. Craft, as Dean of Valley COM, hired Dr. Berkowitz after Meritus passed him over for appointment to dean and demoted him from acting dean back to his departmental position. (Compl. ¶¶ 39–40; Ans. ¶¶ 39–40.) Meritus makes no argument for how any allegations Dr. Craft in her role for Valley COM can be imputed to Salud. Its attacks on Dr. Craft are simply *non sequitur*.

Vicarious liability of an employer for an employee is not automatic and plenary. Rather, "because the master holds out his servant as competent and fit to be trusted, he in effect warrants his servant's fidelity and good conduct in all matters *within the scope of his employment*." *Barclay v. Briscoe*, 427 Md. 270, 283 (2012) (alterations and quotation omitted) (emphasis added) (citing *Oaks v. Connors*, 339 Md. 24, 30 (1995)). "The question of liability does not depend on the quality of the act, but rather upon the question whether it has been performed in the line of duty and within the scope of the authority conferred by the master." *Lewis v. Accelerated Transport-Pony Express, Inc.*, 219 Md. 252, 256 (1959) (quoting *West v. F.W. Woolworth Co.*, 1 S.E.2d 546, 548 (N.C. 1939)). Under proper circumstances, whether the act was within the scope of the employee's employment is a question of law. (*Id.*)

Meritus makes not the slightest effort to argue that Dr. Craft's alleged effort as Valley COM's dean to recruit Dr. Berkowitz were *in the scope of her employment by Salud*. That ends the analysis. Meritus simply has no basis to accuse Salud of hiring Dr. Berkowitz away when Salud, having no relationship to Valley COM, did no such thing.

Meritus attempts to get around this pleading failure by repeatedly insisting that Dr. Craft is a "Key Individual," (Opp'n Br. at 8, 10, 12, 16, and 17), and thus that the termination provisions of Section 6.2(e) relating to personal misconduct by a Key Individual in some way affect this action. (Opp'n Br. at 17.) As discussed *infra*, because Meritus did not purport to rely on Section 6.2(e) in its Repudiation Letter, it is barred from doing so in litigation. *Petroleum Traders Corp. v. Baltimore Cty.*, 2008 WL 11509397, at *8 (D. Md. Sept. 11, 2008), *aff'd*, 413 Fed. App'x 588, 596 (4th Cir. 2011). But, even considered on the merits, this desperate effort is unavailing. "Key Individual" is a contractually defined term referring to three specific, identified people, none of

whom is Dr. Craft. (*Id*. at § 1.) And, Section 6(e), like the others, entitles Salud to "written notice and a reasonable opportunity to cure" before termination is permitted. (Compl. Ex. 1 § 6.2(e).)

Meritus, for apparently rhetorical purposes, insists that Dr. Craft was Meritus's "closest confidant in the accreditation process," and speculates that it would have been "far more economical" for Meritus to have hired Dr. Craft directly onto its staff instead of engaging Salud. (Opp'n Br. at 13.) Such a discursive aside is wholly empty of legal significance, and merely illustrates that Meritus's litigation is a meritless attempt to renegotiate the contract and skip out on the bill now that it is enjoying the fruits of Salud's performance. Whatever paths Meritus could have chosen *ex ante* to go about founding MSOM, the one it *chose* was to engage Salud for "turnkey operations for a college of osteopathic medicine." (Compl. Ex. 1 at 2.) Meritus received exactly that – MSOM is open, matriculating students, and successful by Meritus's own description. (Compl. ¶¶ 41, 44; Ans. ¶¶ 41, 44.) Regret over alternative paths not taken to opening the school are not a proper subject for litigation.

### C. <u>The Opposition's Attempt to Justify its Confessed Breach of Salud's Notice-and-Cure Rights Fails</u>

The Agreement's contractual termination provisions are expressly exclusive. (Compl. Ex. 1 § 6.1.) Each contractual termination, including the Section 6.2(f) Meritus pretextually invoked (Op. Br. Ex. A at 2) entitle Salud to notice-and-cure before termination is available. (Compl. § 6.2(f).) Meritus in its Repudiation Letter acknowledged its grievance could be cured by "returning Dr. Berkowitz to his position at MSOM," but nevertheless expressly disclaimed giving Salud either notice or opportunity to cure. (Op. Br. Ex. A at 2.)

As is discussed herein and in the Opening Brief, Dr. Berkowitz's departure is not attributable to Salud at all, and triggers no termination right. But, even if it somehow did, Meritus's refusal to honor Salud's notice-and-cure rights renders the 'termination' invalid.

Apparently realizing that this fatal infirmity in its putative termination, Meritus in its brief argues that Section 6.2(a) permits termination without opportunity to cure. (Opp'n Br. at 19.) But, Meritus cannot retroactively change its termination grounds, and in any case it misquotes Section 6.2(a). That Section *does* afford Salud an express cure right.

When a party contemporaneously relies on one termination provision in a contract, it cannot retroactively switch to a different one after litigation begins. *Petroleum Traders Corp. v. Baltimore Cty.*, 2008 WL 11509397, at *8 (D. Md. Sept. 11, 2008), *aff'd*, 413 Fed. App'x 588, 596 (4th Cir. 2011); *see also Ohio & Mississippi Ry. Co. v. McCarthy,* 96 U.S. 258, 267–68 (1877) ("Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration.")). Meritus relied on Sections 5.4 (which has no termination provision) and 6.2(f) in its Repudiation Letter, not Section 6.2(a). (Mot. Ex. A at 1–2.)

Even if the Court were to allow Meritus to seek reliance on Section 6.2(a), it offers no justification for Meritus's conduct. That Section reads:

> This Agreement may be terminated by either party upon written notice if the other party breaches any material term or condition of the Agreement and such breach remains uncorrected for one hundred and twenty (120) days, or if the breach is not capable of being cured within the period provided for herein, following written notice from the non-breaching party specifying the breach and the required correction.

(Compl. Ex. 1 at § 6.2(a).) That is, Section 6.2(a) provides that Salud is entitled to an opportunity to cure of the *longer* of (1) 120 days following notice of breach, or (2) the time necessary to effectuate the cure. Meritus, bizarrely, quotes only a partial sentence – "or if the breach is not capable of being cured within the period provided for herein" (Opp'n Br. at 19) – in an ungrammatical extract, trying to reverse the meaning of Section 6.2(a). But, Section 6.2(a) says what it says: Salud is entitled to an opportunity to cure.

As Meritus admitted in the Repudiation Letter, its ostensible grievance could be cured by procuring Dr. Berkowitz's return. (Mot. Ex. A at 2.) Even assuming *arguendo* that Dr. Berkowitz's departure triggered a termination right – it did not – Meritus was contractually obligated to afford Salud the opportunity to procure that return. Meritus expressly breached that obligation. The ostensible termination fails as a matter of law.

**D. Meritus Cannot Add a Trade Secrets Claim in the Briefing**

The Courts of this circuit insist upon specificity in trade secret misappropriation claims because they are "the type of claim that has the potential to seriously disrupt ordinary business relationships." *Sysco Machinery Corp. v. DCS USA Corp.*, 143 F.4th 222, 230 (4th Cir. 2025). "[T]he law erects barriers at the pleading stage in order to prevent such liability from being 'casually triggered.'" *Id*. (quoting *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 321 (4th Cir. 2012)). Specificity in identifying the ostensible secret is required, lest a party make a vague claim "whenever the relationship sours." *Id*. at 230–31. Meritus identifies no such specific secret. Its vague assertion that perhaps Dr. Berkowitz or Dr. Craft possess some "proprietary" information appears intended simply to bolster a deficient contract-and-fraud claim with the aroma of trade secrets. (Opp'n Br. at 15, 19, 23.)

Moreover, "[i]t is well-established that parties cannot amend their complaints through briefing or oral advocacy." *S. Walk at Broadlands Homeowner's Assoc., Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).

The failure to plead such a claim means the Court should reject it out of hand under the "well-established" rule referenced in *OpenBand*. But, even considered substantively, Meritus identifies no trade secret or other intellectual property allegedly divulged.[2] Meritus suggests that

[2] Meritus vaguely suggests that Dr. Berkowitz or Dr. Craft may be in possession of unspecified "personnel data." But, this assertion, absent from the pleadings, is openly published only *by*

it wants to use the imprimatur of this Court in discovery to subpoena Valley COM to "compare to its privileged and proprietary information" to the subpoena response. (Opp'n Br. at 12 n.3.) Which is to say, Meritus alleges not an iota of a traduced intellectual property right, but desires to go on a fishing expedition to harass a rival college of osteopathic medicine. There is no basis in law or equity for any such abuse of the legal process.

### E. Meritus Cannot Defend its Fatally Flawed Fraud Claim

Fraud in Maryland has five elements: "1) that the defendant made a false representation to the plaintiff; 2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth; 3) that the misrepresentation was made for the purpose of defrauding the plaintiff; 4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and 5) that the plaintiff suffered compensable injury resulting from the misrepresentation." *Sass v. Andrew*, 152 Md. App. 406, 429 (2003). Under Rule 9's fact-pleading requirements, to survive a motion to dismiss the plaintiff "must identify 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *MSP Recovery Claims, Series LLC v. Lundbeck LLC*, 130 F.4th 91, 106 (4th Cir. 2025) (quoting *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019)).

#### i. Meritus's Cannot Transform Vague Contract Language Into Fraud

Meritus's sole basis for accusing Salud of fraud is to challenge contractual warranties and promises. (Opp'n Br. at 7–14.) But, as a general rule, "an action for fraud will lie only for misrepresentation of past or existing facts, and that breach of a promise to render a performance

---

*Meritus itself*. *See* Meritus School of Medicine, *Leadership*, https://www.msom.org/team/leadership (last accessed July 31, 2026); Meritus School of Medicine, *Faculty & Staff*, https://www.msom.org/team/faculty-staff (last accessed July 31, 2026).

in the future is redressable only by an action in contract." *Learning Works, Inc. v. the Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir. 1987). Meritus must fit its claim into the narrow exception to this general rule, where fraud may be predicated on contractual promises made with a specific and then-present intention not to perform them. *Id.*; *Appel v. Hupfield,* 198 Md. 374, 382, 84 A.2d 94 (1951). Thus, although vague contractual standards of performance like "best efforts" can create a jury question of whether a specific contractual duty is contextually imposed, such language lacks the specificity to support an action for fraud. *First Union Nat'l Bank v. Steele Software Sys. Corp.*, 154 Md. App. 97, 136–37 (2003) (citing *Tufts v. Poore*, 219 Md. 1, 11 (1959)).

Just so here. Having received the thing it contracted for – a college of osteopathic medicine, open and matriculating students with the approval of accreditation authorities – Meritus attacks Salud by pointing to language even more vague and figurative than the "best efforts" language at issue in *Steele Software*. There is simply no alchemy by which a company contracting in 2022 to perform services with "professionalism, loyalty, punctuality, and competence" (Opp'n Br. at 9) can be said to have retroactively engaged in intentional misrepresentation based on one of its employees (Dr. Craft) taking a job years later at a different employer (Valley COM). Meritus is engaged in word-association, not legal argument.

**ii. Meritus Does Not Allege a Fraudulent Purpose**

Meritus contracted with Salud to develop MSOM, a new college of osteopathic medicine. (Compl. Ex. 1 at 2.) Salud delivered.

Importantly, the intent-to-defraud element requires that the action be "based upon a defendant's deliberate intent to deceive." *Ellerin v. Fairfax Sav. F.S.B.*, 337 Md. 216, 230 (1995). Rule 9(b) requires specificity in such allegations – a plaintiff leveling accusations against a defendant sounding in fraud "must allege what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citing 5 Charles Alan Wright and Arthur

R. Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1297, at 590 (2d ed. 1990)). "Mere allegations of "fraud by hindsight" will not satisfy the requirements of Rule 9(b)." *Id.* (citing *Hillson Partners Ltd. Partnership v. Adage, Inc.,* 42 F.3d 204, 209 (4th Cir. 1994)).

As with its purported breach of contract claim, the *sole* grievance to which Meritus points is that Dr. Craft is now the dean at Valley COM, and in that role hired Dr. Berkowitz months after Meritus demoted him from acting dean back to his departmental role. Meritus makes no suggestion of what Salud had to gain from Dr. Craft joining Valley COM, or failing to disclose to Meritus that she had done so. Once again, Meritus is simply interposing a pretext to try to distract from the material issue of the case: Meritus abandoned the Agreement once it had the fruits in hand.

### F. <u>The Smattering of Unrelated Authorities Meritus Invokes Do Not Support its Positions</u>

In a rearguard defense of its conduct, Meritus invokes a hodgepodge of cases for unclear reasons. This miscellaneous grab-bag accomplishes nothing beyond distraction.

#### i. Consequential Damages are Not Punitive Damages

Meritus invokes several cases for the proposition that punitive damages are generally unavailable in contract actions under Maryland law. (Opp'n Br. at 20.) But, Salud does not seek punitive damages – it seeks *consequential* damages, which Maryland permits when they are "in the contemplation of both parties at the time of making of the contract." *Burson v. Simard*, 424 Md. 318, 327 (2012) (citing *Hinkle v. Rockville Motor Co.*, 262 Md. 502, 510–11 (1971)). The specific consequential damages Salud seeks, "consequential damages for lost profits and opportunities," are expressly permitted by the Agreement, and thus within the parties' reasonable contemplation as a matter of law. (Compl. Ex. 1 at § 7.16.)

### ii. Unlike in *Storetrax*, the Agreement has a Cure Right

Meritus also claims that when a party purports to terminate a contract, "failing to follow proper termination requirements such as proper notice does not make the termination itself invalid, it simply affects potential liability for the damages portion of the dispute in connection with notice," citing to *Storetrax.com, Inc. v. Gurland*, 168 Md. App. 50, 72 (2006). (Opp'n Br. at 19.) Again, it is unclear what Meritus is trying to argue, as indeed this *is* a damages action, as *Storetrax* suggests. But, further, *Storetrax* is inapposite. There, the terminated employee was contractually entitled *only* to notice, not to an opportunity to cure. 168 Md. App. at 70–71. Because he was not entitled to an opportunity to cure, the employer's breach of notice rights only deprived him of his salary for the running of the notice period. *Id*. at 75.[3] Here, the Agreement expressly entitles Salud to an opportunity to cure following notice for any ostensible breach before Meritus can seek to terminate. (Compl. Ex. 1 § 6.2.) Meritus expressly refused to extend an opportunity to cure, despite Salud's contractual right to one, and despite acknowledging cure for its claimed cause was possible. (Mot. Ex. A at 2.)

### iii. There is No Fiduciary Relationship

Likewise irrelevant is Meritus's continued loose use of fiduciary language. (Opp'n Br. at 6, 9, 10, 14.) Simply put, Meritus does not properly allege any fiduciary duty, and at times misstates Maryland law.

In Maryland, fiduciary relationships are distinguished from merely confidential ones. *Buxton v. Buxton*, 363 Md. 634, 654 (2001). All fiduciary relationships are confidential, but not

[3] Though Meritus does not join the issue, Salud notes that the *Storetrax* contract's termination provisions were non-exclusive, and so preserved common law termination rights for material breach. 168 Md. App. at 75 (citing *Tricat Indus., Inc. v. Harper*, 131 Md. App. 89, 114 (2000)). Here, though, the Agreement's termination provisions are exclusive. (Compl. Ex. 1 § 6.1.)

vice versa. *Comptroller of Maryland v. Broadway Servs., Inc.*, 250 Md. App. 102, 122 n.13 (2021). For a business relationship to become even just *confidential* requires a greater showing than just the contract. *Brass Metal Prods., Inc. v. E-J Ents., Inc.*, 189 Md. App. 310, 357 (2009) ("The fact that one businessman trusts another and relies on another to perform a contract does not give rise to a confidential relationship, because something apart from the transaction between the parties is required.") (quoting *Exxon Corp. v. Breezevale, Ltd.,* 82 S.W.3d 429, 443 (Tex. App. 2002)).

Instead, the *sine qua non* of confidential relationships is dependence of one party upon the other. *Upman v. Clarke*, 359 Md. 32, 41–42 (2000) (citing *Green v. Michael*, 183 Md. 76, 84 (1944)). Within that, the confidential relationship becomes a fiduciary one when, as "between trustee and beneficiary, guardian and ward, agent and principal, attorney and client, partners in a partnership, corporate directors and their corporation, [the relationship] 'involves a duty on the part of the fiduciary to act for the benefit of the other party to the relation as to matters within the scope of the relation.'" *Buxton*, 363 Md. at 654 (quoting 1 Austin W. Scott & William F. Fratcher, THE LAW OF TRUSTS § 2.5 (4th ed. 1988)).

Meritus's pleadings show that there was no dependence. Meritus felt free to act without seeking Salud's recommendation, as it did when it selected Dr. George as interim dean following Dr. Gregory's resignation. (Compl. ¶ 28; Ans. ¶ 28.) Meritus felt free to disregard Salud's input, as it did when it bypassed Salud's search process for a permanent dean to poach Dr. Kessler from Campbell University's Jerry M. Wallace School of Osteopathic Medicine. (*Id.* ¶¶ 34–35; Countercl. ¶ 18.) Thus, the relationship was not even a confidential one within the meaning of Maryland law, and so is necessarily not a fiduciary one. *Comptroller of Maryland*, 250 Md. App.

at 122 n.13. Even were it confidential,[4] the Agreement has no indication of the additional type of trustee or guardianship relationship Maryland requires to find a fiduciary duty. Dismissal should follow. *Sterling v. Ourisman Chevrolet of Bowie, Inc.*, 943 F. Supp. 2d 577, 599 (D. Md. 2013).

In attempt to justify its rhetorical forays into fiduciary language, occurring in the absence of a breach of fiduciary duty count, Meritus insists that "Maryland precedent is clear that this is not an independent cause of action but, rather, falls under traditional contract and/or tort claims," citing to an unreported case from this Court from 2008. (Opp'n Br. at 9 n.1 (citing *G.M. Pusey & Assocs., Inc. v. Britt/Paulk Ins. Agency, Inc.*, 2008 WL 2003747 (D. Md. 2008)).) Once again, Meritus is simply incorrect about the applicable law. Maryland's highest court has explained that "under *Kann* [*v. Kann*, 344 Md. 689 (Md. 1997)] and our jurisprudence that followed, a breach of fiduciary duty may be actionable as an independent cause of action." *Plank v. Cherneski*, 469 Md. 548, 597 (2020).[5]

**G. <u>Meritus Fails to Defend its Scandalous and Impertinent Personal Attacks</u>**

As discussed in the Motion, Meritus includes unfounded and impertinent personal attacks on Salud over a project involving Morgan State University, as well as deliberately mischaracterizing unrelated litigation involving Hussian College to imply the nonparty Figulis perpetrated fraudulent conduct of which they were the *victims*. (Op. Br. at 21–22.) These matters have no bearing on the case at bar, and are wholly impertinent efforts to abuse the litigation process for personal smears.

---

[4] Meritus points to language contractual about a "relationship of confidence and trust" from the Agreement, but cuts the sentence off. (Opp'n Br. at 9.) The Agreement continues "*with respect to all information of a confidential, proprietary or trade secret nature*. . ." (Compl. Ex. 1 § 7.8.)

[5] Meritus actually cites to *Plank v. Cherneski* – though, strangely, attributes it to Maryland's intermediate appellate court instead. (Opp'n Br. at 9.) It is entirely unclear how Meritus could cite to *Plank*, yet make so elementary a misstatement of Maryland law expressly rejected therein.

Meritus makes no suggestion for how these attacks are relevant, merely airily calling them "useful background." (Opp'n Br. at 22.) Not only does this fail to draw a connection – Meritus once again repeats its apparently-intentional mischaracterization of the Hussian College litigation, calling it "an embezzlement scandal ***by Key Individuals***." (*Id*. at 23 (emphasis added).) Again, the Figulis are the plaintiffs and victims in the Hussian college litigation – neither they, nor Salud, nor any Salud affiliate is even *accused* of embezzlement. Instead, by once again mischaracterizing the Hussian College litigation, Meritus appears to be intentionally trying to obtain exactly the result it achieved in the Baltimore Business Journal article cited in the Opening Brief: obtaining wider publication of its false and scurrilous reputational attacks in improper retaliation for Salud insisting upon its contract rights.

Instead of justifying their inclusion, Meritus complains that Salud's Motion "fails to mention" that before filing its improper pleadings, Meritus made a settlement offer. (Opp'n Br. at 22.) But, "courts in the Fourth Circuit have concluded that factual allegations within a plaintiff's complaint may be properly considered immaterial and prejudicial where they allege evidence of settlement negotiations in violation of Federal Rule of Evidence 408." *Sharestates Invests., LLC v. WFG Nt'l Title Ins. Co.*, 2023 WL 8436159, at *2 (D. Md. Dec. 5, 2023). Even if the Court were to disregard this fundamental infirmity, Meritus's argument points the other way: such an inclusion shows that Meritus was using the threat of improperly abusing the litigation process to extort Salud into compromising away its rights.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, and for those articulated in the Opening Brief, Salud respectfully requests that the Court dismiss Meritus's Counterclaims, strike paragraphs 28 and 29 and parts of paragraph 42 of the Counterclaim, and enter judgment on the pleadings in Salud's favor as to liability on the Complaint.

Dated: August 10, 2026

Respectfully submitted,

**DUANE MORRIS LLP**

*/s/ Anamika R. Moore*
Allison M. Bortner (Bar No. 19860)
Anamika R. Moore (Bar No. 21689)
1201 Wills Street, Suite 330
Baltimore, MD 21231
Telephone: (410) 949-2900
AMBortner@duanemorris.com
ARMoore@duanemorris.com

OF COUNSEL:

Richard L. Renck (*District of Maryland application for admission forthcoming*; MD Bar No. 2111220002)
Michael B. Gonen (*pro hac vice*)
1201 N. Market Street, Suite 501
Wilmington, DE 19801
Telephone: (302) 657-4900
Fax: (302) 250-4826
RLRenck@duanemorris.com
MBGonen@duanemorris.com

Patrick J. Loftus (*pro hac vice*)
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1367
Loftus@duanemorris.com

*Attorneys for Plaintiff Medical Impact Company, LLC d/b/a Salud Education*